JOHN THOMAS et al., Respondents, *v.* MILO SCUTT, Appellant.

To bring a case within the rule admitting parol evidence to complete an entire agreement of which a writing is only a part, two things are essential. First, the writing must not appear, upon inspection, to be a complete contract. Second, the parol evidence must be consistent with and not contradictory to the written instrument.

While, therefore, parol evidence is admissible to show that a simple assignment, although absolute in terms, was intended as a security merely, when the written assignment contains a contract appearing on its face to be complete, with mutual obligations to be performed by the parties, and which is inconsistent with the theory that it was

simply intended as a security, parol evidence is inadmissible to show that it was only so intended.

Plaintiffs executed an instrument transferring in formal terms to the defendant a quantity of lumber, which it stated was covered by a chattel mortgage annexed. The kinds of lumber, the quantity of each, the price per foot or thousand and the amount the whole would come to at the prices stated, were specified, with the additional statement that any mistake in the quantity was to be corrected. This amount so specified the defendant agreed to apply on the chattel mortgage. *Held,* that the contract was complete upon its face and that the trial court properly excluded oral evidence to the effect that the instrument was not intended as an absolute sale, but that the agreement was that plaintiffs were to have the benefit of what was realized on the sale of the lumber after deducting all expenses, and that it was executed because the lumber was in another state and the chattel mortgage did not protect against a levy upon or a disposition of the lumber in that state.

(Argued April 15, 1891; decided June 2, 1891.)

APPEAL from judgment of the General Term of the Supreme Court in the fourth judicial department, entered upon an order made June 12, 1889, which affirmed a judgment in favor of plaintiffs entered upon the report of a referee.

This was an action to recover the sum of $800 alleged by the plaintiffs to be due them from the defendant upon the sale of a quantity of lumber.

The defendant denied the purchase and alleged that all the lumber that he had of the plaintiffs was turned out to him to secure advances that he had previously made to them, under the express agreement that it should be rafted to market and sold as his lumber and that he should account to them for the proceeds thereof when received, after deducting all expenses and the amount of their indebtedness to him. The defendant further alleged that owing to low water in the Delaware river, the lumber could not be got to market without great expense, necessarily incurred in taking it out of the river and rerafting it, and that the proceeds received by him were much less than the actual expenses and the amount of his claim against the plaintiffs.

The action was tried before a referee, who found that June 11, 1883, the lumber in queston was sold by the plaintiffs to

the defendant for the sum of $728, which was to be applied by him upon a chattel mortgage given by them upon said lumber and other property to secure a debt of $1,600, and that soon after the balance of the mortgage was paid in cash.

It appeared that the defendant at about the date of the alleged sale took possession of the lumber and, after some delay, sold it, but owing to the unusual difficulty of getting it to market, little or nothing was realized above expenses.

Further facts are stated in the opinion.

*W. J. Welsh* for appellant. The referee erred in rejecting the evidence offered by the defendant, to show that the bill of sale was not intended by the parties to be absolute, and that it was agreed that defendant should take the bill of sale and the property therein named, as collateral security for the indebtedness of the plaintiffs to the defendant; that the defendant was liable to account only for the amount actually received for said lumber, or what it was worth when it reached market, under the circumstances and in accordance with the agreement which he claims he had made with the plaintiffs in relation thereto. (*Marsh* v. *McNair*, 99 N. Y. 174; *Eighmie* v. *Taylor*, 19 id. 294; *Blossom* v. *Griffin*, 13 id. 573; *Carr* v. *Carr*, 52 id. 260; *Despard* v. *Walbridge*, 15 id. 374; 31 id. 544; 34 id. 313; *Hutchins* v. *Hubbard*, Id. 24; *Conklin* v. *King*, 10 id. 104; *Goit* v. *Nat. Ins. Co.*, 25 Barb. 191; *Carroll* v. *C. O. Ins. Co.*, 1 Abb. Ct. App. Dec. 316.) In no case can the defendant be deprived of the right to prove a subsequent contract whereby this raft was to be treated as the property of the plaintiffs, subject only to the lien of the defendant for advancement (*Stockwell* v. *Holmes*, 23 N. Y. 53; 61 Barb. 235.)

*A. Taylor* for respondents. The referee correctly decided that parol evidence was inadmissable to vary the terms of the bill of sale. (*Marsh* v. *McNair*, 99 N. Y. 174; *Snowden* v. *Guyon*, 101 id. 458; *Eighmie* v. *Taylor*, 98 id. 288; *Wilson* v. *Dean*, 64 id. 231.)

VANN, J.   Upon the trial the plaintiffs put in evidence a written instrument, dated June 11, 1883, duly signed by them, of which the following is a copy, viz. :

" For the consideration hereinafter named, we hereby sell, assign, transfer and deliver to Milo Scutt one raft of hemlock toggle timber and loading thereon, now lying at Equinunk Eddy, just below the Rock, in Buckingham township, Pa., the said lumber being covered by a chattel mortgage of which the mortgage hereto attached is a copy, viz. :

| | |
|---|---:|
| 4,000 feet cherry boards, at $12 | $48 00 |
| 35,000 maple plank about, at $10 | 350 00 |
| 11,000 feet of toggle timber, at 3c | 330 00 |
| | $728 00 |

" The same to apply on the amount due on said chattel mortgage, and if any mistake in amount of lumber, same to be corrected."

A chattel mortgage was annexed to this writing, dated March 29, 1883, given by the plaintiffs to defendant to secure the payment of $1,600 on the first of May following.   It covered a large quantity of lumber in addition to that mentioned in the written agreement and stated that it was all at Peas Eddy, a place within the state of New York.   The indebtedness of the plaintiffs to the defendant on the 11th of June, 1883, amounted to the sum of $2,100, including that secured by the chattel mortgage.   The plaintiffs also showed that shortly after the written instrument was given they paid to the defendant enough money to fully equal the amount unpaid upon the mortgage, provided said sum of $728 had first been applied.

Thereupon the defendant, in due form offered to show " what was said between the parties in reference to the bill of sale," but the offer was excluded upon the ground that the writing was the best evidence and that it could not be contradicted or avoided by parol.   The defendant further sought to prove " that prior to and at the time of the drawing of the bill of sale, the plaintiffs refused to make an absolute

disposition of the lumber; that they were informed that such was not intended, but that the raft was in Pennsylvania and that the chattel mortgage did not protect defendant against a levy upon or disposition of the lumber by the plaintiffs in that state; that plaintiffs should have the full benefit of the lumber and what it brought on the sale when marketed after paying the defendant's claim and the expense of running and marketing it; that plaintiffs said they were satisfied with that and would make the bill of sale on this basis, and thereupon did sign the bill of sale." This evidence was also objected to and excluded upon the same ground. At a later stage of the trial the defendant under the same objection was permitted to testify in reference to what was said between himself and one of the plaintiffs just before the written instrument, called for convenience a bill of sale, was executed, but it was subsequently stricken out on motion of the plaintiffs and against the objection of the defendant upon the same ground that had governed the prior rulings. Exceptions to these decisions of the referee present the only question that the learned counsel for the defendant has asked us to decide.

It is a general rule that evidence of what was said between the parties to a valid instrument in writing, either prior to or at the time of its execution, cannot be received to contradict or vary its terms.

This rule is not universal in its application, because the courts, in their effort to prevent fraud and injustice, have laid down certain exceptions, which, although correct in principle, are sometimes so loosely applied in practice as to threaten the integrity of the rule itself. (1 Greenleaf on Ev. § 284, a.) The real exceptions may be grouped into two classes, the first of which includes those cases in which parol evidence has been received to show that that which purports to be a written contract is in fact no contract at all. Thus, fraud, illegality, want of consideration, delivery upon an unperformed condition and the like may be shown by parol, not to contradict or vary, but to destroy a written instrument. Such proof does

not recognize the contract as ever existing as a valid agreement and is received from the necessity of the case to show that that which appears to be, is not and never was a contract. Illustrations of this class may be found in the following citations : *Beecker* v. *Vrooman* (13 J. R. 301) ; *Hammond* v. *Hopping* (13 Wend. 505) ; *Johnson* v. *Miln* (14 id. 195) ; *Benton* v. *Martin* (52 N. Y. 570) ; *Grierson* v. *Mason* (60 id. 394) ; 1 Greenleaf's Ev. § 284 ; 2 Cowen and Hill's Notes, 665 ; Note, 494.

The second class embraces those cases which recognize the written instrument as existing and valid, but regard it as incomplete, either obviously, or at least possibly, and admit parol evidence, not to contradict or vary, but to complete the entire agreement of which the writing was only a part. Receipts, bills of parcels and writings that evidently express only some parts of the agreement are examples of this class which leaves the written contract unchanged, but treats it as part of an entire oral agreement, the remainder of which was not reduced to writing. Two things, however, are essential to bring a case within this class : 1. The writing must not appear upon inspection to be a complete contract, embracing all the particulars necessary to make a perfect agreement and designed to express the whole arrangement between the parties, for in such a case it is conclusively presumed to embrace the entire contract. 2. The parol evidence must be consistent with and not contradictory of the written instrument. *Chapin* v. *Dobson* (78 N. Y. 74), is an instance of this class, and, although near the border line, illustrates the two requirements just mentioned. In that case it was held competent to show by parol evidence that a written contract to furnish machinery of a specified kind, at a definite price, within a certain time and to deliver it in a particular way, was part of an entire verbal contract which provided that the machines should be so made that they would do the work of the person who ordered them to his satisfaction. The ground of the decision was that there was nothing on the face of the instrument to show that it was the whole agreement between the parties and that the oral

guarantee did not contradict and was not inconsistent with the written contract.

In *Eighmie* v. *Taylor* (98 N. Y. 288) the court had under consideration a written instrument that was regarded as, upon inspection, appearing to be a full, definite and complete agreement of bargain and sale, and, therefore, held that evidence of a verbal warranty in that case was inadmissible. In the course of the opinion comment was made upon *Chapin* v. *Dobson* (*supra*) in this way: "It was said of the instrument then in question that there was nothing upon its face to show that it was intended to express the whole contract between the parties, the inference being, as was declared in an earlier case, that where a contract does indicate such intention and design, and is one consummated by the writing, the presumption of law arises that the written instrument contains the whole of the agreement, and that where there is such formal contract of bargain and sale executed in writing there can be no question but that the parties intended the writing as a repository of the agreement itself," citing *Filkins* v. *Whyland* (24 N. Y. 338.)

A further illustration of the inflexibility of the first of the two requirements mentioned may be seen in the still later case of *Marsh* v. *McNair* (99 N. Y. 174), where the written instrument was in these words: "This is to certify that in consideration of crediting C. H. Marsh at the Exchange Bank of Lima $353.72, paying mortgage (on property formerly deeded by J. R. Marsh, in Avon, to C. W. Gibson) given by William F. Russell to C. H. Marsh, $110.46, and indorsing $35.82 upon a note made by C. H. Marsh June 8, 1871, for $300, we jointly and severally sell, assign and transfer all our right, title and interest in two policies, Nos. 4277 and 4287, upon the lives of Charles H. Marsh and John R. Marsh, issued by the National Life Insurance Company of the United States of America, to Chauncey W. Gibson, of Lima, N. Y." It was held that in the absence of any claim of fraud or mutual mistake as to the contents of the assignment it was conclusive, and that oral evidence was incompetent to show that it was

executed as collateral security only. The opinion recognizes, as well settled, that an instrument assigning or conveying real or personal property in absolute terms may, by parol evidence, be shown to have been intended as security merely, states the history of the exception and its theory, but declares, in words applicable to the case in hand, that "this instrument is more than an assignment. It contains what both parties agreed to do. It shows that the assignment was made for the purpose mentioned, and precisely what Gibson was to do in consideration thereof. He became bound to do precisely what was specified for him to do, and he could have been sued by the assignors for damages if he had failed to perform. Hence the instrument is not a mere assignment or transfer of the policy. It is a contract in writing within the rule which prohibits parol evidence to explain, vary or contradict such contracts." The authorities cited in the opinion apply with equal force to the case now under consideration.

The principle upon which parol evidence is held admissible to show that a simple assignment, although absolute in terms, was intended as security merely is the supposed incompleteness of the instrument, and it is not regarded as contradicting the writing, but as showing its purpose. (*Truscott* v. *King*, 6 N. Y. 147, 161; *Chester* v. *Bank of Kingston*, 16 id. 336, 343; *Horn* v. *Keteltas*, 46 id. 605, 610.)

Where, however, instead of a mere transfer or assignment, there is a contract, appearing on its face to be complete, with mutual obligations to be performed, " you can no more add to or contradict its legal effect by parol stipulations preceding or accompanying its execution than you can alter it through the same means in any other respect." (2 Cowen & Hill's Notes, 668; *Renard* v. *Sampson*, 12 N. Y. 561; *Shaw* v. *Republic Life Ins. Co.*, 69 id. 286; *Long* v. *Millerton Iron Co.*, 101 id. 638; *Snowdon* v. *Guion*, Id. 458; *Gordon* v. *Niemann*, 118 id. 153; *Humphreys* v. *N. Y., L. E. & W. R. R. Co.*, 121 id. 435; *Engelhorn* v. *Reitlinger*, 122 id. 76.)

In the foregoing classification collateral agreements are not included, because they are separate, independent and com-

plete contracts, although relating to the same subject. They are allowed to be proved by parol because they were made by parol, and no part thereof committed to writing.

Evidence to explain an ambiguity, establish a custom, or show the meaning of technical terms and the like, is not regarded as an exception to the general rule, because it does not contradict or vary the written instrument, but simply places the court in the position of the parties when they made the contract and enables it to appreciate the force of the words they used in reducing it to writing. It is received where doubt arises upon the face of the instrument as to its meaning, not to enable the court to hear what the parties said, but to enable it to understand what they wrote, as they understood it at the time. Such evidence is explanatory and must be consistent with the terms of the contract. (*Dana* v. *Fiedler*, 12 N. Y. 40; *Collender* v. *Dinsmore*, 55 id. 200; *Newhall* v. *Appleton*, 114 id. 140; *Smith* v. *Clews*, Id. 190.)

Returning now to the written instrument executed by the plaintiffs in this case and it appears, upon analysing its provisions, to be an agreement of a complete and comprehensive character. There is first a transfer in formal terms by the plaintiffs to the defendant of a raft of hemlock lumber lying at a place named, followed by the statement that such lumber is covered by the chattel mortgage annexed. Three different kinds of lumber are then enumerated, with the quantity in feet of each, the price per foot or per thousand and the amount that each kind came to at the price named. Those sums are added and the amount thereof, constituting the purchase-price, the defendant expressly agrees to apply on his chattel mortgage and both parties agree to correct any mistake there may be in the amount of the lumber. The method of correcting mistakes is not provided, but it is clear that if the lumber overran the amount stated, the plaintiffs were to have the benefit of it, while if it fell short, the defendant was to have the deficiency made good to him in some way. We regard this contract as complete upon its face. What element is wanting? If such a writing can be undermined by parol evi-

dence, what written instrument is safe? How can a man, however prudent, protect himself against perjury, infirmity of memory or the death of witnesses? What stipulation was omitted that should have been inserted in order to bring the instrument within the general rule? What will be left of the rule if it is established that it does not control such a contract? Will anything of value be left if it is held that a writing which contains the full and definite terms of a contract, apparently complete, may be shown by oral evidence to be simply part performance of an entire verbal agreement previously made? We think that the writing in question is governed by the rule, not by the exception. As was said by this court in *Eighmie* v. *Taylor, supra* (p. 296), it contains a definite agreement of bargain and sale, specifies the consideration, describes the subject, contains mutual covenants for the protection of each party and leaves nothing of a complete, perfect and consummated agreement to be supplied. On its face " no element is wanting of an entire contract, exhausting the final intentions of both parties. It is, therefore, such a paper as falls within the protection of the rule and must be conclusively presumed to contain the whole contract as made."

Moreover, aside from the presumption arising from an inspection of the paper, such a parol arrangement as the defendant tried to prove would be inconsistent with the written instrument, because the purchase-price was not, according to the former, to be applied as provided in the latter. Indeed it would be taken bodily out of the writing and an arrangement of a different and inconsistent character substituted. Besides, the agreement that any mistake in the amount of the lumber should be corrected, while consistent with an absolute sale, is inconsistent with a transfer for the purpose of securing a debt.

We think that the writing in question imports on its face a complete expression of what the parties agreed to and hence that it is conclusively presumed to contain all that they agreed to.

We are further of the opinion that the parol evidence sought to be introduced was inconsistent with and contradictory of

the written agreement and was hence inadmissible on that ground also.

. It follows that the rulings of the referee were correct and that the judgment should be affirmed.

All concur.

Judgment affirmed.