RAYMOND P. LIPE, Appellant, *v.* BEECH-NUT PACKING COMPANY, INC., Respondent.

First Department, March 8, 1935.

*David W. Peck* of counsel [*Sullivan & Cromwell*, attorneys], for the appellant.

*Vermont Hatch* of counsel [*Addison Yeaman* with him on the brief; *White & Case*, attorneys], for the respondent.

O'MALLEY, J.   Should an agreement under seal, whereby the plaintiff in words agreed to sell to defendant certain stock with the agreement on the latter's part to resell at the same price within a specified time, be construed to be a mortgage; and may extrinsic evidence be received to aid in its construction?

In November, 1931, plaintiff was being pressed by the Superintendent of Banks of Ohio as liquidator of the Ohio Trust and Savings Bank of Toledo for payment of notes in the sum of $650,000. Being unable to meet the obligation and fearing the loss of the collateral pledged as security, he approached certain officers of the defendant for a loan.   Plaintiff's proof is to the effect that they agreed on behalf of the defendant to loan him the sum of $200,000 on 5,000 shares of common stock of the defendant; that they informed him that he need not retain an attorney to protect his interest in connection with the formalities and later presented to him a written contract which they stated was the " form " which the transaction was necessarily to take.   This agreement was signed by both parties under date of November twentieth and so far as material, reads:

" Said Lipe agrees to sell and transfer to said Beech-Nut Packing Company five thousand (5,000) shares of the common stock of said Company, par value twenty ($20) dollars each, for the agreed sum of forty ($40) dollars per share, making a total of two hundred thousand ($200,000) dollars, which said Beech-Nut Packing Company agrees to pay to said Lipe on due delivery of said stock.

" Lipe undertakes and agrees to deliver said five thousand (5,000) shares, duly executed for transfer to said Beech-Nut Packing Company, to the Chatham-Phenix National Bank & Trust Company at its place of business at No. 149 Broadway, New York city, together with a draft on said Beech-Nut Packing Company for said Two hundred thousand ($200,000) dollars, which said Beech-Nut Packing Company agrees to honor and pay on presentation, it being understood and agreed that said stock transfer and delivery shall be made effectual by Lipe on or before November 30, 1931.

" Said Beech-Nut Packing Company agrees to resell said five thousand (5,000) shares of said stock to said Lipe at said price of forty ($40) dollars per share (total two hundred thousand [$200,000] dollars) at a date which must be three (3) months after

said November 30, 1931, or at a date of six (6) months after said November 30, 1931, and not thereafter, *said stock thereafter being in case of non-repurchase by Lipe to the full ownership by said Beech-Nut Packing Company.*

" Said Lipe agrees also to pay all stamp taxes required for the transfer of said stock to said Beech-Nut Packing Company and also for the transfer from the said Beech-Nut Packing Company to said Lipe if and when made.

" Said Lipe also agrees that all dividends paid on said stock during said three (3) months period after said November 30, 1931; and/or after said six (6) months period after said November 30, 1931, shall accrue and belong to said Beech-Nut Packing Company if said stock is not at either said three (3) months period or said six (6) months period repurchased by and transferred to said Lipe." (Italics ours.)

Plaintiff transferred the stock to the defendant and the latter made payment therefor, but plaintiff did not repurchase within the time specified. He brought this action, however, to redeem after the law day on the theory that under the wording of the contract itself, and particularly in view of extrinsic evidence relating to the intent of both parties, there was a transfer of the stock by way of security merely and not a strict sale.

Both parties and the learned referee before whom the issues were tried are in accord that extrinsic evidence may be considered in a case involving a simple instrument of conveyance or transfer, such as a deed, bill of sale or assignment executed in part performance of a previous oral agreement. (*Thomas* v. *Scutt*, 127 N. Y. 133; *Horn* v. *Keteltas*, 46 id. 605.)

The referee while receiving the extrinsic evidence for the purpose, if possible, of making a complete record, excluded it in determining the issues. He was of opinion, and the defendant now maintains, that this evidence may not be considered in the case of an executory contract under seal which must be conclusively presumed to contain the full and complete agreement between the parties and may not be modified, contradicted or varied by parol. (*Thomas* v. *Scutt, supra; Marsh* v. *McNair*, 99 N. Y. 174; *Miller* v. *Carpenter*, 68 App. Div. 346; *Studwell* v. *Bush Company*, 206 N. Y. 416.)

While in accord with this rule, we are of opinion that the instrument under consideration by reason of the right given to plaintiff to repurchase, should be construed in the light of extrinsic evidence. As early as *Clark* v. *Henry* (2 Cow. 324) it was clearly held that an agreement by a purchaser to resell at the same price was a defeasance. Such an agreement on its face operates in law to create a mortgage. (*Walsh* v. *Gray*, 214 App. Div. 296, 299, 300.)

This proposition has been several times stated by the Court of Appeals as follows: " An agreement to resell the same property, for the same price, made at the same time and between the same parties, is a defeasance." (*Dickinson* v. *Oliver*, 195 N. Y. 238, 246; *Sheldon* v. *McFee*, 216 id. 618, 621.) (See, also, *Mooney* v. *Byrne*, 163 id. 86; *Hughes* v. *Harlam*, 166 id. 427; *Farmer* v. *Farmer & Son Type Founding Co.*, 83 App. Div. 218; 1 Jones Chattel Mortgages & Conditional Sales [Bowers ed.], § 19.)

Here plaintiff's evidence, as already stated, is to the effect that it was represented to him before signing the instrument that he was obtaining a loan, but that the " form " of the transaction was to be in the manner of the instrument as executed. Equity, however, always looks through the form and gives effect to a transaction so as to carry out the substantial intent of the parties. (*Horn* v. *Keteltas, supra.*) The parties are in accord with the proposition that in equity once a mortgage, always a mortgage, and that the right of redemption may not be summarily cut off by the passing of the law day.

We are of opinion, therefore, that upon the face of the instrument itself, executory though it might have been, there was not necessarily a sale strictly as such, but some indication of security for an advance. Under such circumstances the extrinsic evidence received but disregarded by the referee was competent and material and should have been retained and considered in determining the true intent of the parties.

This evidence is not for the purpose of varying, modifying or contradicting the writing, but merely to explain it to enable a court of equity to arrive at the true intent of the parties. If it is determined that the mere giving of security for an advance was intended then plaintiff will be entitled to recover. On the other hand, if it be determined that the parties intended a true sale in the first instance, then plaintiff will be held to the strict terms of the agreement made. (*Youssoupoff* v. *Widener*, 246 N. Y. 174.)

While, as already appears, the evidence bearing on this issue is in the record, this does not appear to be a proper case for our determining the issues. It is not necessary to detail the writings of both parties and their actions bearing upon their interpretation of the instrument. Suffice it to say that there is presented an issue with respect to the expressed intent of the parties before the execution of the instrument; and after its execution, both parties are shown to have been inconsistent and contradictory in their interpretation of the real nature of the transaction. Under such circumstances the case should be remitted to a tribunal of first instance to resolve the issue thus created. As has been stated,

" the original trier of the facts holds a position of advantage from which appellate judges are excluded." (*Boyd* v. *Boyd*, 252 N. Y. 422, 429.) Here, as already appears, the referee did not pass upon the credibility of the witness nor weight of evidence.

It follows, therefore, that the judgment appealed from should be reversed and a new trial ordered, with costs to the appellant to abide the event, such trial to be before the court or a referee, as may be determined upon the settlement of the order to be entered hereon.

MARTIN, P. J., MERRELL, McAVOY and UNTERMYER, JJ., concur.

Judgment reversed and a new trial ordered, with costs to the appellant to abide the event, such trial to be before the court or a referee, as may be determined upon the settlement of the order to be entered hereon. Settle order on notice.